James Rodney RUTLEDGE,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Etc.,
Respondent-Appellee.

No. 79–2634.

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1980.

Howell L. Ferguson, Tallahassee, Fla., for petitioner-appellant.

David P. Gauldin, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before GEE, FAY and RANDALL, Circuit Judges.

FAY, Circuit Judge:

James Rutledge appeals from the denial of his habeas corpus petition, alleging that ineffective assistance by court-appointed trial counsel rendered involuntary his nolo contendere plea to robbery charges. Rutledge asserts that legal advice concerning his speedy trial and conflict of interest claims was so grossly erroneous that it amounted to an unconstitutional deprivation of his right to counsel. A plea based on such assistance, he claims, could not be deemed knowing and willing. Rutledge also contends on appeal that the district court reviewing these habeas corpus claims erroneously denied relief without reviewing the entire record or holding an evidentiary hearing, or giving him timely opportunity to respond to the magistrate's recommendation to the court. Finding no reversible error in Rutledge's claims, we affirm. ·

Because the procedural rules we must consider are exacting, we review in detail the events preceding Rutledge's plea. The day following his arrest on March 18, 1975, Rutledge was charged by information with a robbery offense. On March 22, a public defender was appointed to represent Rutledge, but was forced to withdraw on March 28 due to a conflict of interest which arose from representing Rutledge and a codefendant. Other counsel appointed by the state court on April 3 was forced to withdraw on April 14 due to yet another conflict of interest. That same day, the court appointed as counsel Mr. Robert A. Harper, who remained with Rutledge through the course of his plea and subsequent state court appeals.

Trial was set for June 16, 1975, well within the 180 day limit set for felony trials by Fla.R.Crim.P. 3.191.[1] Four days before

---

1. Fla.R.Crim.P. 3.191 provides in pertinent part:

(a)(1). **Speedy Trial Without Demand.** Except as otherwise provided by this Rule, every person charged with a crime by indictment or information shall without demand be brought to trial within 90 days if the crime charged be a misdemeanor, or within 180 days if the crime charged be a felony, capital or noncapital, and if not brought to trial within such time shall upon motion timely filed with the court having jurisdiction and served upon the prosecuting attorney be forever discharged from the crime; provided, the court before granting such motion shall ascertain that such person has been continuously available for trial during such period of time for trial. The time periods established by this section .shall commence when such person is taken into custody as a result of the conduct or criminal episode giving rise to the crime charged. . . .

\* \* \* \* \* \*

(d)(1). **Motion for Discharge; Trial; When Timely.** A motion for discharge shall be timely if filed and served on or after the expiration of the periods of time for trial provided for herein; however, a motion for discharge filed before expiration of the period of time for trial shall be

the scheduled trial date, however, defense counsel filed a motion to continue, asserting that the state's dereliction in response to discovery requests had left him inadequate time to prepare. The motion was granted the same day. Trial was rescheduled for October 23, 1975.

On July 7, defense counsel filed a motion to dismiss Rutledge's indictment, arguing that Rutledge had been denied a fair trial because one of his previous lawyers had been representing both him and a co-defendant at the time the co-defendant decided to make a statement inculpating Rutledge. This motion the trial court denied on July 18.

On October 17, 1975, shortly before the trial's rescheduled date, defense counsel filed a motion for discharge, alleging that Rutledge had been deprived of a speedy trial, in contravention of Fla.R.Crim.P. 3.191. Deeming the earlier motion for continuance a complete waiver of the fixed time limitations for speedy trial, the court denied the motion for discharge.

Taken as true for the purpose of habeas corpus review, the petition's allegations establish that Rutledge's counsel then informed him that he could plead nolo contendere and still preserve as viable issues for appeal both the speedy trial and conflict of interest claims. On the strength of this advice, Rutledge did plead nolo contendere on October 23, 1975. Apparently satisfied that the plea was knowledgeable and will-

ing, the trial court accepted the plea and sentenced him to life imprisonment on December 5, 1975.

Rutledge's appellate efforts in state court met with less success than his trial lawyer's advice seems to have portended. Exhaustion of his state remedies was complete by 1978, and Rutledge was still in jail. Thereafter he initiated pro se habeas corpus proceedings in United States District Court, challenging the effectiveness of his counsel and the voluntariness of his plea. Rutledge alleged as an essential defect in his legal counseling that his lawyer waived any chance for discharge under the speedy trial rules, yet told him that his speedy trial claim was a viable issue preserved for appeal, along with the conflict of interest claim. Rutledge then asserted that his lawyer should have known that both the speedy trial and conflict of interest claims were without any merit whatsoever. A United States magistrate considered Rutledge's allegations and an abbreviated record of proceedings. Deeming the petition's allegations inadequate as a matter of law, the magistrate concluded over Rutledge's protestations that the trial record did not need to be reviewed in its entirety. The magistrate then recommended denial of the habeas corpus petition. The following day, the district court adopted the magistrate's recommendation and dismissed Rutledge's petition. On motion for rehearing, Rutledge reasserted the need for the court to review

deemed effective only as of the date of expiration of the period of time for trial.

**(d)(2). When Time May Be Extended.** The periods of time established by this Rule for trial may at any time be waived or extended by order of the court (i) upon stipulation, signed in proper person or by counsel, by the party against whom the stipulation is sought to be enforced, provided the period of time sought to be extended has not expired at the time of signing, or (ii) on the court's own motion or motion by either party in exceptional circumstances as hereafter defined, or (iii) with good cause shown by the accused upon waiver by him or on his behalf, or (iv) a period of reasonable and necessary delay resulting from proceedings including but not limited to an examination and hearing to determine the mental competency or physical ability of the defendant to stand trial, for hearings on pre-trial motions,

for interlocutory appeals, and for trial of other pending criminal charges against the accused. For the purposes of this Rule, any other delay shall be unexcused.

**(d)(3). Continuances; Effect on Motion.** If trial of the accused does not commence within the periods of time established by this rule, a pending motion for discharge shall be granted by the court unless it is shown that (i) a time extension has been ordered as provided in § (d)(2), or (ii) the failure to hold trial is due to the unexcused actions or unexcused decisions of the accused, or of a co-defendant in the same trial. If a continuance or delay is attributable to the accused and is not excused, the pending motion for discharge shall on motion by the State be voidable by the court in the interests of justice; provided, however, trial shall be scheduled and commence within 90 days.

the full record, and also complained that the speed of the district court's action deprived him of a procedural right to object to the magistrate's recommendation. The district court denied the motion for rehearing.

## I. *Ineffective Assistance of Counsel*

■■■ Although pre-plea flaws in providing procedural rights to defendants normally are subsumed in a voluntary plea of guilty or nolo contendere, federal courts may review claimed errors if the state provides a mechanism for appellate review. *Stanley v. Wainwright*, 604 F.2d 379 n.1 (5th Cir. 1979). Florida provides appellate review for such errors as could be dispositive of a case. *Brown v. State*, 376 So.2d 382 (Fla. 1979). Because Florida speedy trial rules provide for a defendant's discharge if his trial is not timely, Rutledge's plea does not block federal court review. *See* Fla.R.Crim.P. 3.191.

■■ Rutledge's appellate contentions that his counsel was ineffective and his plea involuntary both hinge on his lawyer's advice concerning Rutledge's speedy trial and conflict of interest claims. If the lawyer's counseling was so patently wrong as to transgress some constitutional minimum of competent legal advice, then clearly the lawyer was so ineffective that Rutledge's plea based on his advice could not have been knowing and willing. *Mason v. Balcom*, 531 F.2d 717 (5th Cir. 1976). Conversely, if Rutledge's trial counsel merely erred strategically, his advice was nonetheless competent and Rutledge's plea a calculated but voluntary risk. *See Coco v. United States*, 569 F.2d 367, 371 (5th Cir. 1978). To measure the lawyer's effectiveness, then, we must first ascertain the constitutional minimum of competent advice on speedy trial rights and conflict of interest claims.

■■■ That minimum level of competence depends to some extent on the clarity of state law. If the law concerning speedy trial rights and conflicts of interest was unambiguous in every applicable aspect, any erroneous advice would have transgressed the minimum effective assistance due Rutledge. "[C]onstitutionally effective assistance must make an informed evaluation of possible defenses and have a meaningful discussion of the reality of the case with his client. . . ." *Dixon v. Balkcom*, 614 F.2d 1067, 1068 (5th Cir. 1980). Because Florida law provides for unconditional discharge if speedy trial provisions are violated, a failure to advise Rutledge accurately concerning this defense certainly would amount to a constitutional deprivation. If the law pertinent to Rutledge's case was not clear, however, advice amounting to no more than a mistaken tactical maneuver would not have reached the level of constitutional deprivation. *Davis v. Wainwright*, 547 F.2d 261, 264 (5th Cir. 1977). Federal courts may not even review by habeas corpus petition those tactical errors which, as mere violations of state procedural law, are not of constitutional dimension. *Id.* We therefore turn to Florida law to determine how clear and sure a procedural path its statutes, rules, and cases provide to protect speedy trial rights and to guard against damaging conflicts of interest.

## A. *Florida Speedy Trial*

■ Proper assessment of the adequacy of Rutledge's alleged legal counseling requires a brief review of speedy trial law as it stood when he pled nolo contendere on October 23, 1975. By that time, state courts had uniformly acknowledged that by requesting a continuance a defendant waived any right to the state procedural rule's specific time limitations. *See State ex rel. Butler v. Cullen*, 253 So.2d 861, 863 (Fla. 1971). Less obvious were what limits constitutional guarantees placed on speedy trial extensions.

By the time of Rutledge's plea, the Supreme Court of Florida had considered in three leading cases how defendant-initiated delays such as continuances affect the operation of speedy trial rules. In each of these three cases, the court propounded a different ultimate limit on extensions of trial dates.

In *State ex rel. Butler v. Cullen*, 253 So.2d 861 (Fla. 1971), the court approved a trial court's denial of discharge to defendants who had obtained a continuance to complete their defense preparations. According to the court, the grant of continuance rendered the procedural deadlines inapplicable, and gave the trial court discretion to set a new date which would serve both the purpose of the continuance and the constitutional guarantee of speedy trial. Fla.R.Crim.P. 3.191(d)(3), however, was found to require trial commencement within ninety days from the filing of a discharge motion.

The court in *Negron v. State*, 306 So.2d 104 (Fla. 1974), held that a defendant who after a continuance was continuously available for trial must be discharged if not brought to trial within ninety days of the continuance itself.

In *Rubiera v. Dade County ex rel. Benitez*, 305 So.2d 161 (Fla. 1974), the court held that unexcused delay other than a continuance extended the speedy trial limit ninety days past the denial of the defendant's discharge motion, rather than ninety days past its filing.

The *Rubiera* court sought with but limited success to harmonize precedent of both the state supreme court and intermediate appellate courts. Different results in cases without impressive distinguishing features left the law less than clear.[2] Moreover, an intermediate appellate decision limiting *Rubiera's* reach was announced shortly before Rutledge's motion for discharge. In *State ex rel. Wright v. Yawn*, 320 So.2d 880 (Fla. 1st D.C.A. 1975), *cert. denied*, 334 So.2d 609 (1976), the court held that state-induced delay between the defendant's arrest and much later indictment, as well as the state's dereliction in discovery response, subjected the defendant to an unfair dilemma shortly before the speedy trial deadline was to pass.

The state's dereliction forced the defendant to choose between conducting discovery in an abbreviated period or forfeiting his right to a speedy trial. The appellate court reversed the trial court's denial of discharge, holding that the egregious delay engendered by the state should not be attributed to the defendant merely because the defendant filed the actual continuance request. Rather, the court held, the continuance should have been attributed to the state, so that the defendant's speedy trial rights would have been preserved. *But see Rossenwasser v. Smith*, 308 So.2d 600 (Fla. 3d D.C.A. 1975).

Faced with these less than clear pronouncements, Rutledge's trial lawyer was called upon to render counseling based on his best legal judgment. He may well have believed that Rutledge's case so closely paralleled *Yawn* as to compel a similar result. Alternatively, he may have thought that *Negron* should have controlled Rutledge's case. Had *Negron* governed, Rutledge would have gained discharge, since more than ninety days had expired between Rutledge's continuance and the discharge motion. That state appeals found the lawyer's judgment erroneous did not render his counseling ineffective. Consequently, Rutledge's assertion of ineffective counsel is without merit.

## B. Conflict of Interest

▮ Rutledge also contends that his lawyer gave ineffective assistance by incorrectly advising him that he had properly preserved for appeal a viable conflict of interest claim. That conflict claim arose from a previous attorney's joint representation of Rutledge and his co-defendant at the time the co-defendant decided to testify against Rutledge. Taking Rutledge's allegations as true to test their sufficiency, we will assume that the state courts refused to consider the conflict of interest claim because

---

**2.** A decision subsequent to Rutledge's trial helped to explain *Negron's* result. *See Coppola v. State*, 337 So.2d 779 (Fla. 1976). The previous disarray, however, led one justice to remark, "I am beginning to believe our speedy trial rule is little more than a pretense or snare and delusion." *State ex rel. Ranalli v. Johnson*, 277 So.2d 24, 25 (Fla. 1973) (Ervin, J., dissenting). In *State v. Kurtz*, 354 So.2d 890 (Fla. 4th D.C.A. 1978), the court prefaced its opinion in this manner: "We must again venture into the legal morass of the Speedy Trial Rule, Rule 3.191, Fla.R.Crim.P."

it was not properly preserved for review. We find that Rutledge's attack on his counseling nonetheless fails to state a claim for habeas corpus relief. While insisting that his lawyer chose the wrong means to assert the conflict of interest claims, he acknowledges that his suggested alternative might have worked no better. Rutledge recognizes as unresolved the problem of possible conflict arising and expiring at a time considerably preceding plea or trial. Such an unresolved area of the law again demanded that Rutledge's lawyer exercise judgment to determine appropriate means to bring the conflict issue before the court. The success of that exercise in judgment is not open to scrutiny now. *See Coco v. United States,* 569 F.2d at 371. We conclude that Rutledge's counseling was not ineffective and that consequently his plea was not involuntary.

## II. *Adequacy of Review*

■ Rutledge contends that the district court committed reversible error by denying his petition without reviewing certain parts of the state court record. Essential to adequate consideration of his habeas corpus claims, Rutledge claims, was review of the hearings and denials of his motion to dismiss and his motion for discharge. The district court reviewed only that part of the record dealing with the plea and sentencing proceedings. We nonetheless find that that review was ample, because in this case no factual dispute arises from the parts of the record not reviewed. Rutledge's only arguments fail as a matter of law, not of fact. His allegations are insufficient to raise an issue of unconstitutionally ineffective legal assistance. *See Anderson v. Maggio,* 555 F.2d 447, 453 (5th Cir. 1977); *Cowens v. Wainwright,* 373 F.2d 34 (5th Cir.), *cert. denied,* 387 U.S. 913, 87 S.Ct. 1705, 18 L.Ed.2d 637 (1967).

Because the habeas corpus petition failed to allege facts which, if proved, would have entitled Rutledge to relief, the district court was not required to hold an evidentiary hearing. *Easter v. Estelle,* 609 F.2d 756 (5th Cir. 1980); *Cronnon v. State,* 587 F.2d 246, 249 (5th Cir.), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979).

■ Rutledge further complains that the district judge adopted the magistrate's report on Rutledge's petition the day after it was issued, giving him no opportunity to file objections to the report. Rutledge argues that, because his subsequent rehearing petition incorporating those objections did not generate de novo review, he was unlawfully denied an opportunity to respond meaningfully to the magistrate's report, a right purportedly guaranteed by 28 U.S.C. § 636(b)(1) (1976).[3] That section does per-

---

3. 28 U.S.C. § 636(b)(1) (1976) provides:

(b)(1) Notwithstanding any provision of law to the contrary—

(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact, and rec-

ommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

(C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

mit objections to the magistrate's recommendations, and in most instances that privilege to respond does help to safeguard the judiciary's factfinding responsibility. *United States v. Marshall*, 609 F.2d 152, 154–55 (5th Cir. 1980). In this case, however, any error in not reviewing objections before issuing the order adopting the report was harmless. Because none of Rutledge's arguments arose from a factual dispute, the district judge could assess the merits of the petition from its face. Moreover, the petition for rehearing gave the judge further opportunity to reconsider any legal argument. From these circumstances arose no denial of any right which would merit reversal.

## CONCLUSION

Because Rutledge's petition failed to allege facts which, if taken as true, could establish a valid claim of ineffective counsel or inadequate review, the denial of habeas corpus relief is AFFIRMED.